UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEIDI HALL, JOSEPH HALL,

    Plaintiffs,

v.

    Case No. 1:20-cv-731

    Hon. Hala Y. Jarbou

THOMACA BUSH, et al.,

    Defendants.
_____/

## ORDER

This civil rights action arises out of a Michigan Child Protective Services investigation that resulted in the removal and detention of Plaintiffs' children for 61 days. Plaintiffs Heidi and Joseph Hall sue various state and county officials. The state defendants filed two motions to dismiss (ECF Nos. 37, 50) and the county defendants filed a separate motion to dismiss (ECF No. 52). Plaintiffs filed a motion to amend their complaint (ECF No. 65). The magistrate judge issued a report and recommendation (R&R) that the Court grant the motions to dismiss (ECF Nos. 37, 50) and deny the motion to amend (ECF No. 65). Before the Court are Plaintiffs' objections to the R&R (ECF No. 71), and Defendants' responses to those objections (ECF Nos. 74, 76).

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

The Court will address Plaintiffs' objections in the order that they are asserted.

### A. Dismissal of State Defendants

#### 1. Eleventh Amendment Immunity

The magistrate judge determined that the state defendants were entitled to immunity under the Eleventh Amendment for claims against them in their official capacities. Plaintiffs object that the Eleventh Amendment does not prevent claims seeking an injunction. They are correct, insofar as they seek prospective injunctive relief. As discussed in the R&R, however, the complaint provides no basis for seeking prospective injunctive relief. (*See* R&R 8-9.)

Plaintiffs object that there is a risk that they will suffer similar harm in the future. In particular, they contend that if they travel again to Michigan, they could be deprived of the right to due process because Ingham County has a practice of denying due process when processing petitions for the removal of children. That assertion is unsupported. As discussed in the R&R, Plaintiffs failed to allege facts indicating that they were deprived of their right to due process. (R&R 17-18.) Indeed, Plaintiffs received notice of a hearing and then a hearing was held before a state court judge within 2 days after the state removed their children. At the hearing, they were represented by counsel. Thus, they received the requisite notice and opportunity to be heard regarding their right to maintain their relationships with their children. Accordingly, there is no meaningful risk that Defendants will deprive Plaintiffs of their due process rights in the future.

#### 2. *Rooker-Feldman* Doctrine

Plaintiffs fault the magistrate judge for relying on the *Rooker-Feldman* doctrine to dismiss the aspects of Plaintiffs' claims arising from the state court's ex parte orders for the removal of Plaintiffs' children. Plaintiffs note that several of the cases cited in the R&R, including *Cunningham v. Department of Children's Services*, 82 F. App'x 959 (6th Cir. 2021), concluded that allegations against the defendants for conduct "leading up to" the issuance of a removal order were not barred by *Rooker-Feldman*. *Id.* at 964. However, the R&R confines its reliance on the

*Rooker-Feldman* doctrine to the claims for which the state court's orders are the source of injury. The R&R does not recommend dismissal under that doctrine for conduct leading up to the court's orders. In fact, the R&R excludes the latter conduct in its analysis. (*See* R&R 11, ECF No. 70.) Thus, Plaintiffs' concern is unwarranted.

Plaintiffs also contend that the referee issuing the removal order acted in the complete absence of all jurisdiction, but that issue is an exception to judicial immunity. *See Cunningham*, 842 F. App'x at 964. It has no bearing on the application of the *Rooker-Feldman* doctrine. Moreover, for the reasons discussed in the R&R, the referee did not act in the complete absence of all jurisdiction. Plaintiffs contend that the referee did not have jurisdiction to issue a removal order after a preliminary hearing. However, the plain language of Mich. Comp. Laws § 712A.14b says otherwise. And the case cited by Plaintiffs, *In re AMB*, 640 N.W.2d 262 (Mich. Ct. App. 2001), does not apply because it does not examine that provision.

Plaintiffs also contend that *Rooker-Feldman* does not apply because the state court never obtained jurisdiction over Plaintiffs because it failed to serve them. And Plaintiffs assert that the orders were faulty because they were based on "misrepresentations and omissions" and lacked accurate factual findings and an appropriate signature. (Pls.' Objs. 14, ECF No. 71.) These arguments are meritless. The *Rooker-Feldman* doctrine stems from the notion that this Court does not have jurisdiction to review orders issued by state courts. Thus, to the extent Plaintiffs were injured by orders not supported by proper procedure or jurisdiction, their recourse was to challenge those orders in state court. They cannot obtain relief for those defects in this Court.

### 3. Absolute Immunity

Plaintiffs object to the magistrate judge's conclusion that Defendants Ermatinger and Bush are entitled to immunity for their actions leading up to the removal order, including investigating an allegation of child abuse, and preparing and submitting documents to the court in support of the

3

petition for removal.  (*See* R&R 13.)  Plaintiffs again cite *O'Donnell v. Brown*, 335 F. Supp. 2d 787 (W.D. Mich. 2004) to challenge this conclusion, but that case is consistent with the R&R. *See id.* at 826-27 ("The CPS workers' recommendations to the family court, as well as their investigation leading up to those recommendations, relate to the initiation of judicial proceedings and thus fall within the scope of absolute immunity.").  Likewise, the Court agrees that Ermatinger and Bush are entitled to immunity for similar actions.

Plaintiffs rightly contend that actions related to *execution* of the removal order are not subject to absolute immunity.  The R&R said as much.  (R&R 13.)  But as discussed in the R&R, the source of Plaintiffs' injury for executing the order is the order itself, and consequently, Plaintiffs' claims concerning that execution are likely barred under the *Rooker-Feldman* doctrine.  (*Id.* at 19.)  And in any case, Plaintiffs do not allege that Ermatinger, Bush, or any other social worker participated in executing the removal order by removing Plaintiffs' children from them, so Plaintiffs do not state a claim against the state defendants regarding that removal.  (*Id.* at 20-21.) And for the same reason, Defendants' roles were distinguishable from that of the social worker in *Brent v. Wayne County Department of Human Services*, 901 F.3d 656 (6th Cir. 2018), who was not entitled to immunity for her involvement in executing a removal order.  *Id.* at 685.

### 4. Qualified Immunity

Plaintiffs assert that the R&R does not "set forth grounds for dismissal under [q]ualified immunity" and that "Plaintiffs clearly ple[d] violations of a clearly established constitutional right[.]"  (Pls.' Objs. 17.)  To the contrary, the R&R does set forth grounds for dismissal, and the Court agrees with its analysis.

### 5. Substantive Due Process

The magistrate judge concluded that the state defendants are not liable for a substantive due process violation for impairing Plaintiffs' fundamental right to maintain family integrity

4

because the juvenile court had ultimate responsibility to determine the placement and custody of Plaintiffs' children, and it alone could deprive Plaintiffs of their right. (R&R 16 (citing *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586 (6th Cir. 2013)).)

Plaintiffs object that the *execution* of the court's orders deprived them of their fundamental right because the juvenile court did not have jurisdiction over the Plaintiffs, who were Illinois residents located in Illinois when their children were taken from them. As discussed above, however, Plaintiffs do not allege that the state defendants were involved in the execution of the court's orders in Illinois. According to the complaint, the orders were executed in Illinois by Illinois officials. Michigan officials took over custody of Plaintiffs' children in Michigan, after receiving them from the Illinois officials. (Am. Compl. ¶¶ 148-50, 155, ECF No. 46.) In *Kolley*, as here, the plaintiffs contended that the state defendants' actions *before* the court's order deprived them of their fundamental rights, in violation of substantive due process. *See Kolley*, 725 F.3d at 586. And as in that case, those allegations do not state a claim.

### 6. Procedural Due Process

The magistrate judge also concluded that Plaintiffs had received sufficient notice and an opportunity to respond to the removal of their children. Plaintiffs dispute that Defendant Bush informed them by phone that she would be filing a petition for removal, but Plaintiffs alleged this fact in their complaint. It was not error for the magistrate judge to rely on Plaintiffs' allegations.

In addition, Plaintiffs focus solely on the notice they received before the preliminary hearing on September 28, 2018. They do not challenge the magistrate judge's conclusion that Plaintiffs were present at a different hearing on October 1, 2018, only two days after the children were taken from them. As indicated in the R&R, due process in these circumstances required a "hearing within a reasonable time." *See Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). Plaintiffs do not explain how the timing of their hearing was unreasonable.

5

Furthermore, Plaintiffs do not explain why they state a procedural due process claim *against the individual state defendants*. As explained in the R&R, it was the court's duty, not the duty of the social workers or other state defendants, to give Plaintiffs notice and an opportunity to respond. *See Kolley*, 725 F.3d at 587.

### 7. Unlawful Search

The R&R concludes that Plaintiffs do not state a claim against Defendant Bush for her allegedly warrantless search of Plaintiffs' trailer on September 27, 2018, because Plaintiffs allege that they consented to the search. Consent is an exception to the warrant requirement. Although Plaintiffs also alleged that their consent was obtained under duress, the magistrate judge concluded that the complaint failed to state facts to support that contention. Bush allegedly told Plaintiffs that she would seek a court order compelling them to cooperate if they did not consent, but the magistrate judge reasoned that such a statement does not vitiate consent because it is similar to a police officer's threat to obtain a warrant, which does not vitiate consent.

Plaintiffs attempt to distinguish their situation by arguing that a threat by a police officer to obtain a warrant is different because Bush did not have authority to seek an order requiring Plaintiffs to cooperate, whereas an officer has the authority to seek a warrant. In addition, Plaintiffs contend that an order requiring cooperation would have resulted in Plaintiffs' placement on the child abuse registry. Plaintiffs provide no legal support for these assertions. Thus, they have not shown that the magistrate judge erred.

### 8. Equal Protection

Plaintiffs allege that they were treated differently from other parents because they are not Michigan residents, they use medical marijuana, and Plaintiff Heidi Hall is disabled. The magistrate judge concluded that Plaintiffs' allegations of disparate treatment are conclusory. Plaintiffs respond that their complaint contains allegations about policies giving legal protection

6

to parents under Michigan's medical marijuana law.  For instance, Plaintiffs allege that Michigan's medical marijuana program extends "only to verified Michigan card holders but doesn't afford the same protections to out of state residents or recent arrivals that are out of state patients . . . until they have been residents for 30 days." (Am. Compl. ¶ 83.)  Plaintiffs also refer to state policies that purport to permit an ex parte removal order to be filed during business hours without a preliminary hearing; otherwise, such orders must be based on emergency conditions.  (*Id.* ¶ 91.)

Plaintiffs' assertion that Defendants enforced Michigan medical marijuana law does not suggest disparate treatment for purposes of an equal protection claim.  Plaintiffs were present in Michigan and subject to Michigan law when the investigation against them began.

Similarly, Plaintiffs' assertion that Defendants' policies permitted different practices depending on whether a custody order was filed during business hours or after hours does not suggest that Plaintiffs were treated differently from similarly situated individuals, let alone that such treatment lacked a rational basis.  (*See* R&R 24.)  Thus, the Court agrees that Plaintiffs' allegations in support of an equal protection violation are wholly conclusory.

### 9. Failure to Train and Supervise

Plaintiffs contend that they state a claim against Defendants Anderson and Ermatinger "relating to the supervision of the investigation or initiation" of the petition for removal of their children. (Pls.' Objs. 25.)  However, the magistrate judge concluded that absolute immunity bars these claims against these defendants.  (R&R 13.)  The Court discerns no error in that determination.  Thus, even if Plaintiffs state a claim, that claim is barred and cannot proceed.

### 10.   Conspiracy under 42 U.S.C. § 1985(3)

The R&R correctly states that a conspiracy claim under § 1985(3) requires "'some racial or perhaps otherwise class-based, invidiously discriminatory animus[.]'" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting *Griffin v. Breckenridge*, 403 U.S. 88,

102 (1971)). Plaintiffs object that the statute itself does not contain this requirement. Nevertheless, that is how the Supreme Court has interpreted the statute. This Court is bound by that interpretation.

Plaintiffs attempt to satisfy the foregoing requirement by claiming that they are members of the following classes:

> a) . . . any parent whose parental rights have not been previously terminated and any person who has physical custody of a child, b) Non-Native American tribal family members, c) out of state residents, d) out of state medical marijuana patients involved in child custody proceedings, and e) parents of a juvenile under 18 years of age found within Ingham county pointing to specific state laws and particular sections of written policy that give evidentiary support to the Plaintiffs['] claims.

(Pls.' Objs. 26.) However, most of these characteristics do not fall within the narrow category of "class-based animus" covered by § 1985(3), which applies to classes "based upon race or other 'inherent personal characteristics.'" *Webb v. United States*, 789 F.3d 647, 672 (6th Cir. 2015) (quoting *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)). Such classes include only "'discrete and insular' minorities." *Browder*, 630 F.2d at 1150. Only one of the classes mentioned by Plaintiffs—"non-Native American tribal family members"—is defined by an inherent personal characteristic, but that characteristic does not belong to a minority and is not one that has ever been recognized as qualifying for protection under § 1985(3). Thus, Plaintiffs fail to state a claim under § 1985.

### B. Dismissal of County Defendants

#### 1. Eleventh Amendment Immunity

The magistrate judge correctly concluded that the Eleventh Amendment bars Plaintiffs' claims against the county defendants in their official capacities, just as it does for such claims against the state defendants, because the county court is an arm of the state. (R&R 33.)

### 2. Prosecutorial Immunity

The magistrate judge also concluded that claims against employees acting in a prosecutorial capacity are barred by immunity. (*Id.* at 33-34.) Plaintiffs respond that prosecutorial immunity does not apply to their claim against Defendant Siemon, the Ingham County Prosecutor, because Siemon was acting in an administrative role. Plaintiffs note that Michigan law requires county prosecuting attorneys to "develop and establish procedures for involving law enforcement officials and child advocacy centers" in the investigation of child abuse. Mich. Comp. Laws § 722.628(6). However, even if developing and establishing investigative procedures is administrative rather than prosecutorial, Plaintiffs do not explain how the act of developing such procedures bears on their claim against Siemon.[1]

Nor do Plaintiffs address the magistrate judge's analysis that, to the extent Plaintiffs allege that Siemon did not train or supervise state employees, Plaintiffs do not state a claim because it is not Siemon's responsibility to give such instructions. (R&R 44-45.) Siemon's involvement in developing and establishing investigative procedures does not necessarily make her responsible for supervising their application.

### 3. Judicial Immunity

The magistrate judge found that Judge Garcia was entitled to judicial immunity for his role in Plaintiffs' custody proceedings. Plaintiffs attempt to circumvent this immunity by claiming that Garcia is being sued in an administrative capacity because he did not properly supervise court employees and oversee the "efficient operation of a court." (Pls.' Objs. 28.) According to Plaintiffs, Judge Garcia devised a scheme to "fast track" the deprivation of parental rights that injured Plaintiffs by depriving them of notice and an opportunity to be heard. (*Id.*) Contrary to

---

[1] Plaintiffs imply that they might have a claim against Defendants for failing to follow established investigative protocols (Pls.' Objs. 33), but the Court cannot discern the basis for such a claim (*see* R&R 47-48).

9

Plaintiffs' assertions, their allegations pertain to Judge Garcia's judicial capacity. He is entitled to immunity for his conduct in their custody proceedings.

The magistrate judge also found that Referee Brown was entitled to judicial immunity for issuing the ex parte order authorizing the state to take Plaintiffs' children into custody. Plaintiffs object that an exception to immunity applied; they contend that Brown issued his order "in the complete absence of all jurisdiction." *See Mireles v. Waco*, 502 U.S. 9, 12 (1991) (describing requirements for judicial immunity). The Court disagrees. Michigan law expressly permitted Defendant Brown to issue his order. *See* Mich. Comp. Laws § 712A.14b(1). Plaintiffs object that the order did not contain the findings required by law, but if true, that would simply mean that the order was defective. It would not mean that Brown was exempt from immunity.

In addition, the magistrate judge concluded that Defendants Strouse and Alvi-Waller, a Scheduling Clerk and a Deputy Juvenile Register for the Ingham County Circuit Court, respectively, were entitled to judicial immunity for their roles in scheduling the preliminary hearing and updating the docket in Plaintiffs' case. The Court agrees with the magistrate judge that these actions are the sort for which court employees are immune.

Plaintiffs contend that Mich. Comp. Laws § 712A.7 deprived Defendants Strouse and Alvi-Waller of authority to perform their actions. Plaintiffs fail to explain how that statute does so, however. Indeed, that statute expressly provides that a probate judge can appoint a probate register or deputy probate register to "prepare all petitions for investigation, summons, writs and other necessary papers" and to "perform such duties as required by the judge[.]" *Id.*

Plaintiffs contend that Defendants did not have discretion to "set a hearing for a time outside adjudicatory procedures or to bypass a statutory summons process[.]" (Pls.'s Objs. 30.) But as discussed above with respect to Defendant Brown, if Defendants did not comply with a

10

state statute, that would simply mean that their actions resulted in an error in Plaintiffs' proceedings. It would not mean that Defendants would be deprived of immunity. They were clearly performing judicial functions, which entitles them to immunity whether their actions were legally correct or not.

Plaintiffs rely on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) to argue that judicial immunity is not appropriate for Defendants Strouse and Alvi-Waller, but that case is inapposite. It does not address the scope of judicial immunity for court employees. Plaintiffs also rely on *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989) to argue that Defendants are not entitled to immunity because their actions were administrative rather than judicial in nature. In *Morrison*, the Court of Appeals permitted a claim against a court clerk to proceed where the court clerk prevented the plaintiff from filing a petition for restitution, denying all access to the court, under a moratorium imposed by a judge for the court. *Id.* at 468. In that case, however, the Court of Appeals determined that judicial immunity did not apply to the moratorium because it was "a general order, not connected to any particular litigation." *Id.* at 466. Thus, it was an administrative act, not a judicial one. *Id.* Likewise, when implementing that order, the clerk was acting in a ministerial capacity rather than a judicial one. *Id.* at 468.

In contrast, when scheduling the hearing and managing the docket in Plaintiffs' case, Defendants Strouse and Alvi-Waller were performing routine quasi-judicial functions for which they are entitled to immunity.

### 4. Conspiracy under 42 U.S.C. § 1985(3)

Plaintiffs contend that they state a conspiracy claim against the county defendants for claims that involve administrative acts, rather than acts for which judicial immunity is appropriate. Plaintiffs' conspiracy claim is deficient for the reasons identified above. Plaintiffs have not plausibly alleged a racial or class-based, invidiously discriminatory animus, let alone that

11

Defendants conspired to deprive them of their rights on the basis of such animus. Thus, Plaintiffs' immunity argument is irrelevant.

### C. Plaintiffs' Motion to Amend their Complaint

Plaintiffs filed a motion to amend their complaint. They have already amended their complaint once. The magistrate judge examined Plaintiffs' proposed amended complaint and determined that their request was made in bad faith and that the proposed amendments would not, in any event, save their claims from dismissal.

#### 1. Adoption of Protocols

Plaintiffs seek to add additional allegations about the prosecutor's statutory obligation to develop and implement child abuse and neglect investigation protocols. Plaintiffs contend that the obligation to develop such protocols is evidence that Siemon was responsible for training and supervising state employees. As discussed above, however, the Court cannot discern a plausible claim based on a failure to follow such protocols.

#### 2. Removal of the Children in Illinois

Plaintiffs also attempt to recuperate their claims relating to the removal of their children from Illinois. Plaintiffs argue that the court's removal order was insufficient because it did not apply outside Michigan. However, that purported deficiency does not alter the R&R's analysis of any of Plaintiffs' claims. It does not impact the application of the *Rooker-Feldman* doctrine, the application of immunity, or any other analysis that renders Plaintiff's claims against Defendants subject to dismissal.

In addition, as noted in the R&R, Plaintiffs' proposed amendments attempt to bring their case in line with *Brent*, where a social worker was not given prosecutorial immunity for her role in executing a removal order. *See Brent*, 901 F.3d at 685. Here, Plaintiffs allege in the proposed amended complaint that "State Defendants enlisted Champaign County Illinois Sheriff Office to

12

seize the Plaintiffs['] children with a facially invalid court order[.]" (Proposed Am. Compl. ¶ 133, ECF No. 66-3.) Defendants did not send the orders to Illinois officials; instead, they spoke with the Illinois officials over the phone. (*Id.* ¶ 134.) However, the magistrate judge determined that, unlike the social worker in *Brent*, the social workers here did not "recruit[] Illinois officials under false pretenses" to execute a removal order. (R&R 48.) Thus, to the extent the social worker defendants communicated with Illinois officials about the existence of the removal order, they would be subject to qualified immunity for their actions, like the social worker in *Cunningham*, 842 F. App'x at 969.

In response, Plaintiffs point to false statements that Defendants Bush and Ermatinger allegedly made to obtain the order (Pls.' Objs. 34-35), but that conduct is subject to prosecutorial immunity for reasons discussed in the R&R. Thus, Plaintiffs' objections on this issue are meritless.

### 3. Referee Brown's Order

Plaintiffs' proposed amended complaint purports to attack the validity of Referee Brown's ex parte order. In their objections, Plaintiffs assert several reasons why they believe that the order was invalid and violated their rights. None of those reasons undermines the magistrate judge's determinations that: (1) Referee Brown is subject to immunity for issuing the order, and (2) a claim based on injury stemming from that order is barred by the *Rooker-Feldman* doctrine. In other words, whether the order was valid or not, it does not give rise to a viable claim.

In short, the Court discerns no merit to Plaintiffs' objections to the R&R. Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 70) is **APPROVED** and **ADOPTED** as the Opinion of the Court.

**IT IS FURTHER ORDERED** that the motions to dismiss (ECF Nos. 37, 50, 52) are **GRANTED** as set forth in the R&R.

**IT IS FURTHER ORDERED** that Defendants Alvi-Waller, Brown, Garcia, Siemon, Strouse, Chang, Gordon, Anderson, Bush, Ermatinger, Martinez, McCall, Montemayor, and Unknown Party #2 are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to amend their complaint (ECF No. 65) is **DENIED**.

What remains in the case are Plaintiffs' claims against Unknown Party #1, Unknown Party #3, and Unknown Party #4.

Dated:   August 25, 2021                              /s/ Hala Y. Jarbou
                                                                     HALA Y. JARBOU
                                                                     UNITED STATES DISTRICT JUDGE