UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEIDI HALL, JOSEPH HALL,

    Plaintiffs,

v.

    Case No. 1:20-cv-731

    Hon. Hala Y. Jarbou

THOMACA BUSH, et al.,

    Defendants.
_____/

# ORDER

This is a civil rights action by two individuals proceeding *in forma pauperis*. On May 6, 2022, the magistrate judge issued a report and recommendation that the Court deny Plaintiffs' motion to amend their complaint, dismiss the claims against the remaining defendants, and deny Plaintiffs' motion to transfer venue. (*See* 5/6/2022 R&R 2, ECF No. 113.) Before the Court are Plaintiffs' objections to the R&R. (ECF No. 114.)

**A. Review Standard**

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

In addition, the Court's local rules provide that objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objections are made and the basis for such objections." W.D. Mich. LCivR 72.3(b).

**B. Background**

The magistrate judge summarized the facts giving rise to this action in the July 21, 2021 R&R (ECF No. 70) that this Court adopted as its Opinion.  In short, Plaintiffs allege that Defendants had some involvement in a process that involved the State of Michigan taking custody over Plaintiffs' children after a visit by Plaintiffs to Michigan.

Court records filed by Plaintiffs indicate that Defendant Bush, a social worker, investigated Plaintiffs' living conditions and then petitioned the state court on September 28, 2018, to take jurisdiction over Plaintiffs' children due to parental neglect.  (Pet., ECF Nos. 112-1, 112-2.) Defendant Brown, a court referee, held a preliminary hearing that same day and then granted the petition, finding that Plaintiffs' children were at a "substantial risk of harm" to their "life, physical health or mental well bring."  (Order After Prelim. Hr'g, ECF No. 112-5, PageID.3037-3038; 9/28/2018 Hr'g Tr., ECF No. 112-28, PageID.4055-4056.)  That same day, Plaintiffs left the state, causing Bush to ask Judge Garcia for "apprehension orders" because Plaintiffs had "absconded" with their children.  (Bush Aff., ECF No. 112-6, PaegID.3043.)  Judge Garcia then issued a removal order authorizing officials to take Plaintiffs' children into protective custody, finding that Plaintiffs "have absconded with the child."  (Order to Take Child(ren) Into Protective Custody, ECF No. 112-6, PageID.3044-3046.)  Defendant Ermatinger, another social worker, then asked for assistance from Illinois officials to seize Plaintiffs' children, which they did on September 29, 2018.

After the Court dismissed most of Plaintiffs' claims, the only claims that remained were those against unnamed defendants.  The magistrate judge recommended dismissing those defendants but Plaintiffs subsequently sought leave to amend their complaint.  The Court remanded the matter to the magistrate judge to determine whether amendment would be warranted.

The magistrate judge has determined that amendment would be futile and recommends dismissal of the remaining claims.

### C. Plaintiffs' objections

Plaintiffs' objections rarely identify the specific portion of the R&R to which they are objecting. Instead, Plaintiffs generally argue why they believe their case has merit. In many instances, Plaintiffs appear to be raising issues that the Court resolved in previous orders. At issue in the R&R is whether Plaintiffs' proposed amended complaint states new factual matter that would save their claims from dismissal. For the most part, Plaintiffs' objections ignore that issue. Nevertheless, the Court will endeavor to address those objections that are pertinent to the R&R.

#### 1. Written Notice

Plaintiffs assert that "it is not disputed that [they] were not given written notice of the preliminary hearing" on September 28, 2018, which resulted in an order authorizing the removal of their children. (Pls.' Objs., PageID.114.) Even so, Plaintiffs do not explain how the lack of written notice before the hearing allows their procedural due process claim to survive. As the magistrate judge explained, Plaintiffs do not allege injury apart from entry of that order. (5/6/2022 R&R 5-6.) Consequently, their procedural due process claim is barred by the *Rooker-Feldman* doctrine. *See Hancock v. Miller*, 852 F. App'x 914, 921-22 (6th Cir. 2021) (dismissing a similar claim).

#### 2. New Allegations against Defendants Strouse, Brown & Alvi-Waller

Next, Plaintiffs contend that the proposed amended complaint contains new allegations against Defendants Strouse, Brown, and Alvi-Waller. In particular, Plaintiffs contend that these defendants avoided a "written summons process" and "[took] away the original petition" for "in home jurisdiction," substituting it with a "removal petition" and thereby depriving Plaintiffs of equal protection and a "constitutional" right to "written summons at least 72 hours in advance of

3

a hearing." (Pls.' Objs., PageID.4107.)  Such allegations do not state an equal protection claim, and Plaintiffs do not explain how they would state any other federal claim.

### 3. Judicial Immunity:  Judge Garcia

Plaintiffs further contend that Judge Garcia is not entitled to judicial immunity for actions that Plaintiffs contend are part of his administrative duties.  The Court has already rejected that argument.  (*See* 7/21/2021 R&R 35-42, ECF No. 70.)

### 4. Qualified Immunity

The magistrate judge noted that some defendants, including Defendant Ermatinger, would be protected by qualified immunity.  (5/6/2022 R&R 9.)  Plaintiffs assert that it is premature to raise the issue of qualified immunity at the pleading stage.  However, the Court has already explained why it is appropriate to consider this issue when determining whether to grant a motion to amend the complaint.  (7/21/2021 R&R 47.)  And contrary to Plaintiffs' assertion, the Court can consider qualified immunity at the pleading stage, particularly where that defense is "apparent from the face of the complaint." *See Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021).

### 5. Quasi-Judicial Immunity

Plaintiffs contend that Defendants Strouse, Alvi-Waller, and Brown are not entitled to quasi-judicial immunity because they "avoid[ed] legal lawful process" by "taking away the original petition that did not seek removal and was sent to the court for scheduling purpose[s]." (Pl.s' Objs., PageID.4109.)   Plaintiffs contend that these actions are evidence of malice or corruption that warrant an exception to quasi-judicial immunity. *See Smith v. Martin*, 542 F.2d 688, 691 (6th Cir. 1976).  Contrary to Plaintiffs' assertion, these allegations do not suffice to infer a malicious or corrupt motive.

Plaintiffs also argue, as they have in the past, that Referee Brown is not entitled to immunity because he acted in the absence of all authority.  The Court discerns no basis for departing from

4

its previous rejection of that argument. (*See* 8/25/2021 Order 10, 13, ECF No. 77; *see also* 5/6/2022 R&R 3.)

### 6. Dismissal Standard

Plaintiffs urge the Court to apply the dismissal standard from *Hishon v. King & Spalding*, 467 U.S. 69 (1984), which provides that a court dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* at 73. That standard, which derives from *Conley v. Gibson*, 355 U.S. 41 (1975), was abrogated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). It is not the appropriate standard for testing the sufficiency of the allegations in a complaint.

### 7. Reliance on *Cunningham* and *Reguli*

Plaintiffs argue that several Court of Appeals cases cited by this Court, including *Cunningham v. Department of Children's Services*, 842 F. App'x 959 (6th Cir. 2021) and *Reguli v. Guffee*, 371 F. App'x 590 (6th Cir. 2010), are either bad law or that the Court misapplied them. The Court disagrees. And in any case, those opinions are not cited in the May 6, 2022 R&R, so Plaintiffs' objections regarding those cases are not relevant.

### 8. *Rooker-Feldman* doctrine

Plaintiffs contend that the *Rooker-Feldman* doctrine does not apply to the extent they are challenging the conduct of social workers leading up to the state court's orders. The Court addressed that argument in its August 25, 2021 order. (*See* 8/25/2021 Order 2-3.) Plaintiffs further contend that the state court orders are no longer in effect, so the *Rooker-Feldman* doctrine does not apply. This argument is unsupported; Plaintiffs cite no authority for this contention.

Plaintiffs also argue that the *Rooker-Feldman* doctrine does not bar their claim against Defendant Bush. That argument is irrelevant because the magistrate judge reasoned that immunity bars their claim against Bush. (*See* 5/6/2022 R&R 6.)

Plaintiffs further argue that the state court's orders were "void" because they were "'rendered in the absence of subject matter jurisdiction or tainted by due process violations[.]'" (Pls.' Objs., PageID.4115 (quoting *Twin Fire Ins. Co. v. Adkins*, 400 F.3d 293, 299 (6th Cir. 2005).) That argument undermines Plaintiffs' assertion that they are not challenging a state court decision and "run[s] headlong into *Rooker-Feldman*." (5/6/2022 R&R 3.) It is also meritless as an objection because it has no bearing on the R&R. In *Twin Fire*, the Court of Appeals described an exception to the rule that a federal court must give effect to a state court decision. It did not describe an exception to the *Rooker-Feldman* doctrine, or to any other principle discussed in the R&R. The same goes for Plaintiffs' reliance on *Hospital Underwriting Group, Inc. v. Summit Health Ltd.*, 63 F.3d 486 (6th Cir. 1995), which stated that a state court judgment could be "collaterally attacked . . . if the court lacked subject matter jurisdiction over the case[.]" *Id.* at 495. That principle has no impact on the magistrate judge's *Rooker-Feldman* analysis.

### 9. Alleged Defects in State Court's Orders

Plaintiffs assert various defects in an order issued by Judge Garcia: it was electronic; it lacked the signature of the complaining witness; it lacked a signature of the judge; it was not filed with the court. This Court has already addressed similar arguments. (*See* 8/25/2021 Order Approving & Adopting R&R 3, ECF No. 77.) They do not suffice to save Plaintiffs' claims. Nor do they warrant amendment of the complaint.

Similarly, Plaintiffs contend that Referee Brown issued a "verbal" order after a hearing. (Pls.' Objs., PageID.4118.) The Court cannot discern the relevance of this contention because the Court cannot find that allegation in the proposed amended complaint. Further, the orders at issue are in writing, as evidenced by Plaintiffs' submissions.[1]

---

[1] Plaintiffs apparently argue that the order by Referee Brown signed and dated September 28, 2018, was a "verbal" one because the register of actions in the custody case indicates that this order was not filed until October 1, 2018,

Throughout their objections, Plaintiffs make a number of arguments about why they believe that the state court's orders were defective or improper under state law, but they do not explain how those defects overcome the magistrate judge's reasons in the R&R for why any federal claims in the amended complaint would be futile. A violation of state rules or law does not necessarily amount to a constitutional violation.

### 10. Procedural Due Process Claim

Plaintiffs apparently dispute the magistrate judge's finding that their procedural due process claim is barred by immunity and the *Rooker-Feldman* doctrine; Plaintiffs contend that they did not receive adequate notice of the September 28 preliminary hearing, but the Court agrees with the magistrate judge that their proposed amended complaint does not rectify the deficiencies in this claim. Plaintiffs attempt to distinguish *Kolley v. Adult Protective Services*, 725 F.3d 581 (6th Cir. 2013), which held that in Michigan, the court is responsible for providing notice of custody hearings, not social workers. *Id.* at 587. Thus, the social workers in that case were not liable for failing to provide adequate notice or for any procedural due process claim associated with that failure. *Id.* Plaintiffs contend that *Kolley* only applies to guardianship cases brought under Michigan's mental health code, Mich. Comp. Laws § 330.1614, not abuse and neglect cases like the one at issue here. Regarding the latter, Plaintiffs argue that there are rules with "language" indicating that the defendant social workers are responsible for notifying parents of custody hearings. (Pls.' Objs., PageID.4120.) Plaintiffs cite several rules and statutes but do not identify the relevant language on which their argument is based. Thus, Plaintiffs' argument is unsupported.

---

after Plaintiffs' children were seized. (*See* Register of Actions, ECF No. 112-4, PageID.3027.) And they apparently argue that Judge Garcia's order was a verbal one because it does not appear on the register of actions. (*See id.*) However, Plaintiffs have filed copies of the orders. Those orders became effective when they were signed. *See Frankfurth v. Detroit Med. Ctr.*, 825 N.W.2d 353, 356 (Mich. Ct. App. 2012) ("[U]nless otherwise explicitly specified, orders are effective when signed by the judge.").

Further, the May 6, 2022 R&R relies on *Kolley* only for the purpose of establishing that "only a juvenile court is authorized to interfere with the fundamental right to family integrity." (R&R 7.) The Court discerns no error in that statement. Plaintiffs' argument regarding the responsibility of social workers to provide notice of custody hearings does not undercut the magistrate judge's reasons for dismissal of their procedural due process claims, i.e., immunity and the *Rooker-Feldman* doctrine.

**11. Judge Garcia**

Plaintiffs also contend that the magistrate judge made a mistake of fact by stating that "the only allegations against Defendant Garcia [are that] he issued an order[.]" (Pls. Objs., PageID.4127.) Plaintiffs contend that, in fact, the complaint alleges that Garcia made "policy making decisions for the way cases are processed and he had administrative duties beyond an unfiled unsigned electronic order that the Plaintiffs have sought claims against[.]" (*Id.*) Plaintiffs do not indicate in their objections what decisions or duties they are referring to. According to their proposed amended complaint, Plaintiffs purport to "seek monetary damages [against Garcia] for federal claims for his administrative duties in supervising and training court employees[.]" (Proposed Am. Compl. ¶ 160, ECF No. 92-1.) Even if such claims were not barred by judicial immunity, they would fail because Defendant Garcia is not liable under 42 U.S.C. § 1983 for the conduct of his subordinates, or for the failure to train or supervise them. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Next, Plaintiffs argue that the magistrate judge made a mistake of fact in finding that Judge Garcia signed the September 28, 2018 removal order. (5/6/2022 R&R 3.) The Court discerns no error in that finding. The judge's signature is clearly visible on the form. (*See* ECF No. 53-2, PageID.1917.) It is true that the Court must accept as true the allegations in Plaintiffs' complaint,

but the Court is not required to ignore "verifiable facts central to [their] claims, that make[] [their] allegations implausible." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).

### 12. Referee Whitworth

Plaintiffs also refer to a "verbal" order by "Referee Whitworth" (Pls.' Objs., PageID.4130); however, the Court cannot find any reference to Whitworth, or to a verbal order, in Plaintiffs' proposed amended complaint. Thus, Plaintiffs' statements about these matters are not relevant to their motion to amend or to this Court's review of the R&R.

### 13. Defendant Bush

Plaintiffs continue to argue that Defendant Bush is liable for an "unreasonable search" of their children and their trailer during Bush's investigation, but the Court addressed Plaintiffs' Fourth Amendment claim in a previous R&R adopted by the Court. (*See* 7/21/2021 R&R 49-51.) The Court discerns no error in that decision.

Plaintiffs apparently argue that Bush is liable for the seizure of Plaintiffs' children because she allegedly asked for the removal order using false information. Plaintiffs rely on *Kovacic v. Cuyahoga County Department of Children & Family Services*, 724 F.3d 687 (6th Cir. 2013), but that case distinguishes between "[f]iling a complaint for abuse, neglect, and temporary custody," which is subject to prosecutorial immunity, and "removal of the children from the home," which is not. *Id.* at 694. Bush did not execute the removal order. Under *Kovacic*, she is entitled to prosecutorial immunity for seeking such an order.

### 14. Defendants Forrest & Ermatinger

The R&R also explains that Defendants Forrest and Ermatinger are entitled to qualified immunity to the extent they were involved in the execution of the removal order. (*See* 5/6/2022 R&R 9-10.) Plaintiffs respond that their amended complaint "rectified the lack of details of what was told by [Ermatinger] to Illinois authorities," who seized Plaintiffs' children. (Pls.' Objs.,

9

PageID.4137.) Plaintiffs do not elaborate on this assertion, so the Court cannot discern with precision the allegations that Plaintiffs rely upon. Plaintiffs may be referring to the following allegations:

> On or [a]bout 09/29/2018 . . . assistance from [Illinois] law enforcement was requested by Defendant Ermatinger, . . . . The electronic ex parte protective custody order was executed without a signature of a judicial decision maker, in excess of its state line limits, the order was based on misrepresentations from Defendants Ermatinger and Bush that the Plaintiffs had absconded from a prior protective custody order and omissions the Plaintiffs had asserted rights to service at their residence in Illinois, lllinois Courts had exclusive jurisdiction and were currently in Illinois and thus the Defendants exceeded their authority and did not have a valid enforceable order. . . .
>
> On 9/29/2018 Defendants Ermatinger reported the Plaintiffs to Illinois DCFS for investigation of allegations of a protection issue in Illinois with the Children being at Substantial risk of Physical Injury/Environment Injurious to health and welfare by neglect and requesting assistance executing apprehension orders, claiming Michigan had an open investigation into the Plaintiffs "due to unstable housing, Physical abuse, neglect and supervision issues with criminal intent and substance abuse[.]"
>
> Defendant Ermatinger reported the Plaintiffs had their primary residence in Michigan, were highly transient and had cps history in multiple states but did not tell DCFS that the Plaintiffs had asserted they were not Michigan residents, the Plaintiffs never had a primary residence established in Michigan, the Plaintiffs had provided the Plaintiffs current Illinois address, that the Plaintiffs wished to enter into an Illinois guardianship with a prior guardian that had been given placement in a prior Illinois court order and the Plaintiffs had not been in Michigan for 6 months. Champaign County Illinois Sheriff Office asserted to the Plaintiffs they acted in good faith having relied on Defendants Ermatinger misrepresentations of a court order . . . .
>
> Illinois DCFS Records show that Defendant Forrest documented she relied on the lies 1.) the Plaintiffs had their primary residence in Michigan 2.) The children had been both psychically abused and neglected in Michigan told to her by Ermatinger and she transported the Plaintiffs children to Monee Illinois and turned the children over to Michigan authorities.

(Proposed Am. Compl. ¶¶ 100-103.) The Illinois officials did not receive a copy of the removal order before seizing Plaintiffs' children; instead, they allegedly relied upon Defendant Ermatinger's representations about that order. Ermatinger could be liable for a Fourth Amendment

10

violation to the extent she was involved in the execution of that order. Requesting assistance from Illinois officials to execute the removal order and conveying the details of that order to those officials for that purpose is arguably enforcement activity that is not protected by prosecutorial immunity.

Accordingly, Plaintiffs might have a viable Fourth Amendment claim against Ermatinger if she was aware of (1) "known falsities" provided to the court that caused the court to issue the order, or (2) a "'glaring deficiency'" in the order that "'any reasonable officer would have known was constitutionally fatal.'" *See Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 685, 697 (6th Cir. 2018) (quoting *Groh v. Ramirez*, 540 U.S. 551, 564 (2004)). Such deficiencies do not include "irregularities" or "'technical error[s] in an otherwise valid warrant which fail[] to raise any substantive fourth amendment concerns.'" *Id.* at 696-97 (quoting *United States v. Palmer*, Nos. 84-5940, 84-5980, 1985 WL 13528, at *5 (6th Cir. July 30, 1985)).

Plaintiffs do not plausibly allege that Ermatinger was aware of any "falsities" that caused the state court to issue the custody order or the removal order. Plaintiffs imply that the allegations of abuse and neglect made by Bush were false; however, there are no allegations in the proposed amended complaint from which to plausibly infer that Ermatinger was aware of any such falsehoods.

Plaintiffs apparently contend that Ermatinger was aware that Bush's representation that Plaintiffs had "absconded" from a protective custody order was untrue. However, Plaintiffs "absconded" in the sense that their children were under the custody of the State of Michigan when they left the state. Thus, Bush's representation was not false.

Plaintiffs also contend that Ermatinger misrepresented Plaintiffs' primary state of residence as Michigan when speaking with Illinois officials. That misrepresentation is irrelevant because it

did not cause the court to issue the removal order. Indeed, Referee Brown considered the possibility that Plaintiffs resided in Illinois before approving the petition to take Plaintiffs' children into state custody. Bush told the court that Plaintiffs had presented her with Colorado driver's licenses with Illinois addresses and that the Plaintiffs had been in Michigan for "at least" a month. (9/28/2018 Hr'g Tr. 12-13, 16.) Based on these facts, Brown approved the petition to exercise jurisdiction over Plaintiffs' children and take them into state custody. Later that day, Judge Garcia issued the removal order because Plaintiffs had "absconded" with their children. (*See* ECF No. 53-3.) Even if Ermatinger knew that Michigan was not Plaintiffs' primary residence, she could rely upon the court's assessment of its jurisdiction over Plaintiffs' children.

Plaintiffs also fail to allege a "glaring deficiency" in the removal order that would have rendered it constitutionally defective. Even if that order was not filed on the docket when executed, that defect would, at most, be a technical one, not a constitutional one. Whether or not Ermatinger made additional statements to Illinois officials about Plaintiffs is irrelevant. Those additional statements could not have impaired those officials' ability to execute an order that was facially valid as far as the Fourth Amendment is concerned. Thus, Ermatinger is entitled to qualified immunity for her role in enforcing a facially valid order.

In summary, Plaintiffs' objections are meritless, irrelevant, or unsupported. Accordingly,

**IT IS ORDERED** that the May 6, 2022 R&R (ECF No. 113) is **APPROVED** and **ADOPTED** as the Opinion of the Court.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to amend their complaint (ECF No. 91) and motion to transfer the case (ECF No. 98) are **DENIED**.

**IT IS FURTHER ORDERED** that the claims against Defendants Forrest (Jane Doe #1) and Jane Does ##2-4 are **DISMISSED** for failure to state a claim.

**IT IS FURTHER ORDERED** that the Court declines to certify that an appeal by Plaintiffs would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

A judgment will enter in accordance with this order.

Dated:   June 1, 2022                                      /s/ Hala Y. Jarbou
                                                                            HALA Y. JARBOU
                                                                            UNITED STATES DISTRICT JUDGE